IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT E. CARTER,

                          Plaintiff,

    v.                                                     OPINION & ORDER

WAL-MART STORES, INC.,
WAL-MART STORES EAST, LP, JOHN                  17-cv-246-jdp
MURPHY,
MATTHEW MIKESELL, and SHANNA KANAPS,

                          Defendants.

Pro se plaintiff Robert E. Carter brings claims against defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, John Murphy, Matthew Mikesell, and Shanna Kanaps for violations of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Carter alleges that defendants retaliated against him after he filed a discrimination complaint with the Wisconsin Department of Workforce Development Equal Rights Division. Defendants suspended and ultimately terminated Carter.

The court granted Carter leave to proceed *in forma pauperis*. Dkt. 4. The next step is for the court to screen the complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915. When screening a pro se litigant's complaint, the court construes the allegations liberally and in the plaintiff's favor. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Carter has moved for leave to file an amended complaint. Dkt. 5. I will grant the motion and consider the amended complaint for screening purposes. But because Carter has not stated any claims upon which relief can be granted, I will dismiss his amended complaint.

ALLEGATIONS OF FACT

I draw the following facts from Carter's amended complaint. Dkt. 5-2.

Carter is a convicted felon (securities fraud, wire fraud, intent to commit access device fraud). In December 2016 and January 2017, he applied for and secured a job at a Walmart distribution center; he disclosed his convictions during the application process. After Carter had been at Walmart for a few weeks, he met with Murphy, the human resources manager, and Kanaps, the operations manager. Murphy began the meeting by saying, "You are not in any trouble or anything and you are not being fired or losing your job." *Id.* ¶ 54. Murphy continued, "We just wanted to talk to you because several of the associates have been talking about you." *Id.* Murphy and Kanaps had learned that Carter had been telling his coworkers that he planned to run for political office. Murphy asked Carter whether he had "talked about finances in any way with any of the associates." *Id.* ¶ 56. Carter said that he hadn't. Then Murphy handed Carter a Forbes magazine article and asked Carter whether it was about him. The article discussed Carter's 2010 trial and convictions. Carter asked what was going on, and Murphy said, "I am asking about it because an associate gave it to me. . . . You are not losing your job. . . . We just wanted to talk to you." *Id.* ¶ 60. Carter explained that he had disclosed the convictions during the application process; Murphy reemphasized that they wanted to employ Carter and that they "believe in second chances." *Id.* ¶ 61. The meeting ended there.

About a month later, on March 7, 2017, Murphy summoned Carter to his office again. Mikesell, the asset protection manager, was there, too. Murphy explained that they had a few questions for Carter about his convictions and stated, "You are not being fired or anything[.]" *Id.* ¶ 64. Murphy had received a letter from the Walmart Global Security Department that indicated that Carter (1) had applied for a position with the Asset Protection Division, and (2) had not disclosed all of his convictions during the background check. Neither statement was true, and Carter told Murphy as much. Murphy explained, "Well, if you just answer the questions that they have asked on this form and explain what you have told us, then this should all be fine." *Id.* ¶ 75.

After the meeting, Carter called a "legal advisor." *Id.* ¶ 76. The advisor (presumably a lawyer) told Carter to file a discrimination complaint with the Wisconsin Department of Workforce Development Equal Rights Division for violations of the Wisconsin Fair Employment Act. Carter did so the following day. Then he went to work and gave Murphy a copy of the background check report that verified that he had disclosed his convictions during the application process. Murphy acknowledged as much: "You are exactly right, its [sic] right here in black and white." *Id.* ¶ 82. Carter then told Murphy that he had filed a discrimination complaint because Walmart had discriminated against him because of his convictions. Murphy, visibly frustrated, concluded the meeting, and Carter returned to work.

The following day, March 9, Murphy called Carter and told him that he was suspended with pay. Carter didn't understand why, especially because Murphy had assured him that his job wasn't in jeopardy. Murphy told Carter, "Well you are the one who started this with filing the complaint, making this legal." *Id.* ¶ 87. So later that day, Carter filed a charge with the EEOC for retaliation.

3

The next day, Carter received three emails from Walmart requesting that Carter authorize a background check because he had purportedly received a conditional offer of employment. But Carter had not applied for any other positions with Walmart. Carter believes that Walmart generated false applications to create a reason to fire him. Carter called Murphy, and Murphy told him that he needed to consent to the background check. When Carter asked why, Murphy said that they needed his consent to begin "[t]he investigation regarding the failure to disclose the 2006 convictions." *Id.* ¶ 100. In Carter's view, "Murphy had no reasonable explanation for what was happening," so Carter refused to consent to the background check. *Id.* ¶ 105.

Several days later, on March 15, Murphy called Carter and told him that he had been terminated. When asked why, Murphy responded, "Well it's because you would not consent to the background check." *Id.* ¶ 108. So Carter filed a retaliation complaint with the Wisconsin Department of Workforce Development Equal Rights Division.

Carter received an exit interview form in the mail following his termination. It stated that he had been involuntarily terminated for gross misconduct. That was the first that Carter had heard of any misconduct on his part.

On April 12, 2017, the EEOC issued Carter a Right to Sue letter. It had "determined that the protected status based on a conviction record created under Wisconsin law was not a protected class enforceable under a statute over which the EEOC has jurisdiction." *Id.* ¶ 19.

ANALYSIS

Carter brings retaliation claims under the Fair Labor Standards Act (FLSA) and Title VII: defendants suspended and then terminated Carter because he filed a discrimination

complaint with the Wisconsin Department of Workforce Development after defendants discriminated against him because of his convictions.

## A. FLSA retaliation

"The FLSA prohibits employers from retaliating against an employee who has asserted his FLSA rights." *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp. 2d 682, 688 (E.D. Wis. 2007). Specifically, "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). So to state an FLSA retaliation claim, a "plaintiff must show that he participated in FLSA-protected activity." *Hernandez*, 508 F. Supp. 2d at 688.

To participate in an FLSA-protected activity, an employee must "provide the employer with 'fair notice' that the employee is invoking rights under the FLSA." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 975 (7th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). The FLSA "sets federal standards for a minimum wage and maximum working hours, requires equal pay for men and women, and regulates child labor." *Hernandez*, 508 F. Supp. 2d at 688. It does not prohibit employers from discriminating against employees because of their conviction records. Carter does not allege that he filed a complaint or instituted proceedings under the FLSA or otherwise asserted his rights under the FLSA, so he cannot state a claim for FLSA retaliation. *Id.*; *see also Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999) ("Sapperstein filed a complaint or instituted proceedings by reporting to the appropriate authorities conduct which was clearly under or related to the minimum wage and maximum hours laws. . . . He was therefore protected from

retaliation . . . ."). Carter cannot maintain an FLSA retaliation claim when he has not asserted his rights under the FLSA.

**B. Title VII retaliation**

Carter's Title VII retaliation claim suffers a similar fate. "Title VII makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII].'" *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff may prove Title VII retaliation under either the direct method or the indirect method of proof. *Id.* Either way, a plaintiff must plead that he engaged in a Title VII-protected activity. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016).

Again, Carter has not engaged in the type of activity protected under Title VII. "Employers are prohibited from punishing employees for complaining about discrimination or other practices *that violate Title VII*." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (emphasis added). Under Title VII, an employer may not discriminate against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII does not prohibit employers from discriminating against convicted felons. And Carter appears to know that; he pleads that he is a member of a protected class under *Wisconsin* law; when he filed his discrimination complaint, he engaged in protected activity under state law. Tellingly, the EEOC dismissed Carter's charge because "[t]he facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." Dkt. 5-3.

Carter does not allege that he engaged in a Title VII-protected activity, so he cannot state a claim for Title VII retaliation. *See Sitar*, 344 F.3d at 727 (affirming summary judgment where the plaintiff's "complaint did not invoke any action protected by Title VII").

The grievance of Carter's complaint is that his employer violated state laws that protect those convicted of crimes. I see no basis for a claim that would be within this court's jurisdiction. Accordingly, there is no reason to offer Carter a further opportunity to amend his complaint.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert E. Carter's amended complaint, Dkt. 5-2, is DISMISSED for failure to state a claim upon which relief can be granted.

2. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered August 23, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge